UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OTIS ELEVATOR COMPANY,

    Plaintiff,

Case No. 03-CV-71478

vs.                                    HON. GEORGE CARAM STEEH

HUNT CONSTRUCTION
GROUP, INC.,

    Defendant.
_____/

OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING AS MOOT OTIS' OBJECTIONS TO THE MAGISTRATE'S ORDER GRANTING HUNT'S MOTION TO STRIKE OTIS' PROPOSED EXPERT WITNESS

INTRODUCTION

This lawsuit stems from problems plaintiff Otis Elevator Company ("Otis") experienced with the installation of elevators, escalators, and moving walkways on the Detroit Metropolitan Airport ("DTW") midfield terminal project. Defendant Hunt Construction Group, Inc. ("Hunt") acted as general contractor to Northwest Airlines for the project. Otis, whose contracts were also made with Northwest Airlines, rather than Hunt, has sued Hunt for negligence, unjust enrichment, and breach of a third party beneficiary contract. Before the court is Hunt's motion for summary judgment and/or to dismiss. Because Otis has failed to raise material questions of fact as to its negligence claims and has not established either third party beneficiary or unjust enrichment claims against Hunt, summary judgment will enter for Hunt. In accordance with the court's

disposition of the motion, Otis' pending objections to the magistrate's order granting Hunt's motion to strike Otis' proposed expert witness will be dismissed as moot.

## BACKGROUND

This case stems from Otis' involvement with the midfield terminal construction project at DTW, for which both Otis and Hunt Construction Co. ("Hunt") had contracts with Northwest Airlines to supply labor and/or materials.  Hunt was the general contractor and Otis had contract(s) with Northwest Airlines to provide elevators, escalators, moving walkways and the passenger tram for the project.  There was no written agreement between Otis and Hunt, the two parties to this lawsuit.  In its complaint, Otis claims Hunt damaged Otis' property, primarily through Hunt's delay in its schedule for the project.  Otis' complaint, filed here April 15, 2003 on the basis of diversity of citizenship, alleges counts of 1) negligence, 2) unjust enrichment, and 3) breach of a third party beneficiary contract against Hunt.  Specifically, Otis claims material and labor costs for "replacement of pallet chains," in the amount of over $1.2 million, $34,304.28 in damages resulting from incidents where Otis equipment was damaged, water infiltration damages, and costs relating to movement of equipment in the amount of $33,140.37.

Hunt now moves for summary judgment and/or to dismiss, asserting Otis has no viable negligence claims against a general contractor for damage to its equipment. Regarding four specific negligence claims made by Otis, Hunt states they are based on four separate incidents of property damage caused by Hunt subcontractors, for whose negligence Hunt cannot be held responsible.  Hunt further asserts Otis cannot identify any specific negligent acts by Hunt causing any other damage.  Concerning the third

party beneficiary count, Hunt points to language in its contract with Northwest Airlines which states that "no provisions of the contract documents shall in any way inure to the benefit of any third person..."  Hunt argues for dismissal of the unjust enrichment claim on the basis that Otis provided no benefit to Hunt and because an express contract exists between Otis and Northwest Airlines, covering the subject matter of Otis' equitable claims.  The court's consideration of the parties' arguments and determination on Hunt's motion is set forth below.

## STANDARD

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice.  The procedure is not a disfavored procedural shortcut.  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences therefrom must be construed in the light most

favorable to the non-moving party.  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Redding</u>, 241 F.3d at 532.  "[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original); <u>see</u> <u>also</u> <u>National Satellite Sports, Inc. v. Eliadis, Inc.</u>, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial."  <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 270 (1968); <u>see</u> <u>also</u> <u>McLean v. 988011 Ontario, Ltd.</u>, 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  <u>Anderson</u>, 477 U.S. at 248, 252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant.  <u>McLean</u>, 224 F.3d at 800 (citing <u>Anderson</u>, 477 U.S. at 252).

## ANALYSIS

A.  MOTION FOR SUMMARY JUDGMENT

1) Negligence Count

In arguing for dismissal of Otis' negligence claims, Hunt cites to <u>Wasaya v. United Artist Theatre Circuit, Inc.</u>, 205 F.Supp. 2d 756, 759 (E.D.Mich. 2002) and <u>Riddle v. McLouth Steel Products Corp.</u>, 440 Mich. 85, 96 (1992) for the required elements in a claim for negligence: 1) defendant owed plaintiff a legal duty; 2) breach of that duty by

4

defendant; 3) damages suffered by the plaintiff; 4) defendant's breach of the duty was the proximate cause of the damages suffered by the plaintiff. Plaintiff agrees with these requirements.

i.  Damage by Hunt subcontractors

The court will first address four specific incidents of property damage on the construction site claimed by Otis, which Hunt asserts were caused by Hunt subcontractors. These items of property damage are specifically listed in the Fed. R. Civ. P. 26 disclosures made by Otis and included on p. 5 of Exhibit B in defendant's appendix of exhibits to defendant Hunt Construction Group, Inc's Motion for Summary Judgment and/or Motion to Dismiss: soffit panel damages, barricade damages, and damages to escalators E-05 and 08, totaling $34,304.28. Hunt demonstrates that an Otis Fed. R. Civ. P. 30(b)(6) deponent, Doug Tripp, testified that this property damage was caused by subcontractors State Group, AJP, and MBM, which the court notes was not disputed by plaintiff in its response brief.

Hunt's argument here is that Hunt is not liable to Otis for the acts of other contractors, for which it cites Ormsby v. Capital Welding, Inc., 471 Mich. 45 (2004). That case holds that "a general contractor may be held liable for the negligence of its independent subcontractors only if all the elements of the four-part 'common work area' test set forth in Funk have been satisfied." Ormsby, 471 Mich. at 60. This argument is not specifically addressed by Otis' response brief, which asserts concerning these items of damage only that "[i]t was also foreseeable and virtually certain that Otis would be affected by the scheduling of other contractors in close proximity to glass balustrades." Otis' Response brief, p. 12. Indeed, Otis does not proffer facts or argument in an

5

attempt to satisfy the four part "common work area" Funk test discussed at length in Ormsby, Id. at 57. Defendant's argument convinces the court that there is no question of material fact regarding Hunt's causation of these damage items, for which Hunt is not liable as a matter of law.

ii. Pallet chain replacement, water infiltration, and movement of equipment claims

Otis' complaint listed the following specific repairs and expenses allegedly caused by defendant's negligence:

a) costs for repeatedly moving material around the job site to unintended destinations;
b) replacement of E08 plunger due to rust caused by water in the pit;
c) repairs for water damage to walks E21-E24;
d) repairs for water damage to walks W01-W04;
e) repairs for water, mud and silt damage to walks P01-P06;
f) repair to broken balustrade for escalator E05;
g) repair to broken balustrade for escalator E08;
h) repair and replacement of elevator barricades;
I) repairs to APM stainless steel soffit panels.

Complaint, ¶ 19. The following paragraph in the complaint addresses "future repair and/or replacement costs because of excessive wear and tear to its equipment caused by flood and exposure damage directly related to Defendant's delays, mis-scheduling, lack of appropriate communication, and forced storage of the Otis equipment in non-suitable environments." Id., ¶ 20. Items f-l, above, have been addressed in the prior section of this opinion. The remaining claims, all stemming from the same alleged negligent actions and omissions of Hunt, are for 1) an amount of approximately $1.2 million for future pallet chain part replacements for the moving walkways; 2) an amount, apparently disputed by the parties, for Otis' expenditures attributable to the water

6

infiltration[1]; and 3) an amount of approximately $33,000 for movement of equipment. These will be addressed in turn.

*Pallet chain replacement*

In Hunt's argument on Otis' approximate $1.2 million pallet chain replacement claim, it points to Rule 30(b)(6) deposition testimony in which Otis admits that the pallet chains have not actually been replaced. This is not disputed by plaintiff. Otis responds, however, by pointing to deposition testimony of Douglas Tripp, p. 48, asserting certain damages stem from the "premature" installation of the moving walkways, at Hunt's request, in reliance on Hunt's assertion that it would complete walls at the ends of the tunnel. Otis asserts that in fact Hunt made no attempt to seal the tunnel during its installation of the equipment, and did not close the tunnel until a year later. Tripp, p. 57, 77-78. Otis asserts water continually got into the "wellways and hoistways," that it attempted to tarp the equipment, but could not keep portions of the walkways from freezing over and being submerged. Otis claims its most significant moving walkway damages[2] came via the damage to the pallet chains, which it could not replace prior to opening of the terminal due to financial and time constraints. Otis asserts Hunt cannot

---

[1] Defendant's motion asserts this claim is for $347,274.86, whereas Otis's response brief lists the following amounts expended on the water damage: $90,000 for labor; $35,000 for replacement parts; $30,000 in "other clean up costs, motor repairs and superintendent hours" (see plaintiff's response brief, p. 6); and $129,000 for repairs to water damage to Moving Walks W01-W04 and E21-E24 and for the replacement of the plunger of Elevator E08 (Id. p. 8). These amounts listed in Otis' response brief total $284,000.

[2] Otis' brief also asserts this resulted in additional labor costs of over $90,000, replacement parts in excess of $35,000, and $30,000 in other clean up costs, motor repairs, and superintendent hours.

7

deny the extent of the damage, and estimates that the costs for replacing the chains will be $1,116,000 ($986,000 plus $130,000 for labor).  Otis states that although it has not incurred these costs yet, it will be responsible for them because, although its one-year warranty on the equipment is over, it has a five-year, fixed price maintenance agreement with Northwest Airlines, which was negotiated during the bidding process, and before the "construction fiascos."  Otis states that contract is renewable for up to five additional years in one year increments.

Otis asserts this negligence claim is viable, as it can recover for actual damage to the property regardless of whether it has been replaced prior to suit, and that Hunt's argument really relates to the proper *measure* of damages.  If the expense of repairs is less than the market value of the pallet chains, Otis asserts the measure of damages is the cost of the repairs, citing Strzelecki v. Blaser's Lakeside Industries of Rice Lake, Inc., 133 Mich. App. 191, 194 (1984).  Otis contends it is entitled to recover the full costs of repairing the walkways, including pallet chain replacement, in addition to approximately $380,000 in costs[3] expended to repair other water damage, addressed below.

Otis claims that it and Hunt had a relationship which obligated both of them to exercise due care in their dealing with each other.  Otis quotes from Clark v. Dalman, 379 Mich. 251 (1967):  Michigan common law "imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his

---

[3] This $380,000 figure is stated on p. 10 of Otis' brief, although, as noted above, the individual figures listed by Otis add up to $284,000.  In any case, the exact amount claimed is not relevant here.

8

actions as not to unreasonably endanger the person or property of others." Otis contends its relationship with Hunt obligated Hunt to use "due care in instructing and directing the delivery and installation of equipment." See Otis' Response Brief, p. 12. Furthermore, Otis asserts that its injury was foreseeable and that there is an immediate connection between defendant's conduct and the injury to plaintiff.  Otis argues that not completing the passenger tunnel for a year after Hunt directed Otis to move its equipment into the tunnel is a clear act of negligence on the part of Hunt.

This claim will not survive defendant's motion. The court is convinced that, in addition to uncertainty about the *amount* of damages, there is "uncertainty as to the *fact* of legal damages," which is "fatal to recovery," as aptly stated in the Wolverine Upholstery Co. v. Ammerman, 1 Mich.App. 235, 135 N.W. 2d 572, 576 (1965) case quoted by ADR North America, L.L.C. v. Agway, Inc., 303 F.3d 653, 660 (6th Cir. 2002), relied on by defendant. It would be, as defendant contends, pure speculation to determine whether and when the equipment will break down, and whether such a possible breakdown would be premature. Otis does not offer testimony or evidence to the contrary. Moreover, there is no dispute that Northwest Airlines is now the owner of this equipment, and that Otis' one year warranty with respect to this equipment has long ago expired. As defendant contends, there is no question of material fact that plaintiff's continuing obligation to maintain the pallet chains, through its operations and maintenance agreement with Northwest Airlines, was entered into *after* opening of the midfield terminal, thus after Otis' knowledge of any water damage. See Burger deposition, pp. 62-66. Finally, the moving walkways housing these pallet chains, moving twenty-four hours a day, had not yet "experienced any problems, any major

9

problems yet," per the testimony of Otis Fed. R. Civ. P. 30(b)(6) deponent John Mosella, as of August 23, 2004, and there has been no evidence proffered to the contrary to date. The court will grant defendant's motion as to this component of plaintiff's negligence claim.

*Water infiltration*

Concerning plaintiff's remaining claims relating to water damage, Hunt argues that Otis has failed to demonstrate a question of material fact as to Hunt's causation of Otis' damages. Hunt asserts "Otis has absolutely no evidence that Hunt was negligent," and that Otis has failed to identify "one specific incident in which Hunt's employees allegedly failed to exercise reasonable care." Brief in Support of Defendant Hunt Construction Group, Inc.'s Motion for Summary Judgment and/or Motion to Dismiss, p. 14. In response to this assertion, Otis generally asserts Hunt's delay in closing the Passenger Tunnel (see, e.g., Tripp deposition, pp. 57-59, 77-78), and points to Exhibit A to its Brief in Opposition to Defendant's Motion for Summary Judgment and/or Motion to Dismiss, which is a February 12, 2001 letter from Northwest Airlines' Project Manager Dennis Farmer to Charles D. Prewitt of Hunt, complaining of Hunt laborers' use of the escalator pit for escalator E14 as a transfer point for pumping water out of the building. However, this escalator was not listed in the complaint as damaged and, as argued by defendant, no damage to this particular equipment is listed or claimed in Otis' Rule 26(a)(1) disclosures.

It is the court's determination that this claim will likewise not survive defendant's motion. As discussed above, both parties' citation to <u>Clark v. Dalman</u>, 379 Mich. 251 (1967), shows their agreement with the proposition that the law in Michigan generally

10

imposes an obligation to use due care, so "as not to unreasonably endanger the person or property of others." Id. at 261. It is true that defendant energetically argues that no special "general contractor" duty applies under these circumstances, resulting in no potential liability on the part of Hunt. However, it is the court's impression that plaintiff's claim relies on only the general, common law duty of reasonable care which would be applicable where two contractors are working together on a job site, just as it would apply to two pedestrians walking on a sidewalk. Nevertheless, plaintiff's general allegations do not persuade the court that a question of material fact exists for trial. Plaintiff has failed to specifically identify any wrongdoing by defendant relating to water infiltration, other than the pumping complaints made in its February 12, 2001 letter, which resulted in no claimed damages.

*Movement of equipment*

Concerning plaintiff's claim for movement of equipment around the site at Hunt's allegedly negligent direction, the court is in agreement with Hunt that plaintiff has not developed a question of material fact as to Hunt's breach of a duty. In response to Hunt's motion, plaintiff asserts only that "Otis also incurred significant and unexpected labor costs in constantly relocating its equipment throughout the terminal," and asserts that a "detailed discussion of the damages and supporting evidence is provided below." Plaintiff's brief, p. 5. However, all that is provided by Otis concerning this claim is the assertion in plaintiff's brief that "[a]t Hunt's direction, Otis continually relocated its equipment around the site in late 2000 and early 2001." The "supporting evidence" pointed to by Otis is the Burger deposition, pp. 46-47, which in summary states only that Otis was first "working as a good subcontractor working with Hunt to move equipment

around based on how things were changing with the dynamics of the installation," but later began invoicing Hunt for the labor costs when Otis became frustrated with the process. Specifically, Burger testified as follows:

> Q. When you say try to get the building built as we agreed to so we wouldn't have to move it around, what should have been done in your mind that wasn't done that would cause that to occur, if anything?
>
> A. I'm not a general contractor, I'm a subcontractor, but obviously if you want things to go as scheduled, you need to make sure that the milestones are hit for every single subcontractor.

Burger deposition, pp. 47.

The court is convinced that this "evidence" does not present a triable question of fact. There has been no evidence presented by Otis that Hunt's actions or omissions caused unnecessary or unusual movement of equipment and associated extraneous labor costs by Otis, or even that the movement of equipment on this project was unusual for a project of that scale. The plaintiff's mere assertions that these costs should be Hunt's will not suffice to present a question of material fact. See Anderson, 477 U.S. at 248, 252. Summary judgment will enter for Hunt as to these claims.

2) Third Party Beneficiary Claim

Otis explains in its response brief that this claim concerns Change Order # 0003 to the Hunt/Northwest Airlines' contract, which Otis contends contained a specific promise directly for Otis:

> The Passenger Conveyance Systems Contractor (Otis) is also a separate contractor with major interfaces to the building. The Contractor (Hunt) shall coordinate his schedule with the Otis schedule in accordance with paragraph 1.34 of this section....

Otis' response brief, pp. 15-16, Exhibit B.  This language, Otis argues, establishes that Hunt and Northwest Airlines entered into the agreement in part for the benefit of Otis. Otis acknowledges that the initial Hunt/Northwest contract contained a provision disavowing third party beneficiary claims, but asserts that the change order altered the terms of the original contract by "creating enforceable rights and obligations between Hunt and Otis."  Plaintiff's brief, p. 16.  Plaintiff argues that where the first and second contracts are in conflict, the second governs, citing Omnicom of Michigan v. Gianetti Inv. Co., 221 Mich. App. 341, 347 (1997).  Defendant, on the other hand, states that the first of two conflicting clauses in a contract will control, citing Central Jersey Dodge Truck Center, Inc. v. Sightseer Corp., 608 F.2d 1106 (6th Cir. 1979).

      The court does not agree that this is a case in which it must resolve conflicting provisions of a contract.  Hunt and Northwest did not cancel the disavowal of third party beneficiary rights merely by including Otis' name in a change order to the contract.  The change order addresses coordination of Otis' work on the project with Hunt subcontractors' work:  "[t]he Contractor will coordinate all OTIS work, integrate needs for access, laydown, etc., and will in management treat all aspects of the OTIS work as if a subcontractor."  This created no *direct* benefit for Otis, as argued by the defendant, citing Koenig v. City of South Haven, 460 Mich. 667, 682-83 (1999).  Furthermore, the change order was subject to the terms and conditions of the original contract.

      The court agrees with Hunt that "change order No. 0003" is not inconsistent with the terms and conditions of the original contract, which explicitly provide, at Section 25D, that no third-party beneficiary rights are created.  See Exhibit 12 to Hunt's Motion for Summary Judgment.  Otis does not have a third party beneficiary claim here.

13

3) Unjust Enrichment Claim

The crux of this claim by Otis is that if it is not permitted to proceed to the jury on its contract theory, it should be permitted to proceed on the alternate theory of unjust enrichment. Otis contends that Hunt directly benefitted from Otis' repair of property damaged by Hunt, and obtained the benefit of free labor for relocating heavy equipment. Hunt, on the other hand, maintains Otis has no unjust enrichment claim. Hunt argues there were express contracts covering Otis and Hunt's work on the project, and that in fact Otis was paid for its work on the project and received several million dollars in "additive change orders" from Northwest Airlines.

The elements of an unjust enrichment claim under Michigan law are "1) receipt of a benefit by the defendant from the plaintiff and 2) an inequity resulting to [the] plaintiff because of the retention of the benefit by defendant." Barber v. SMH (US) Inc., 202 Mich. App 366, 375 (1993). The plaintiff cannot establish these elements in this case. As discussed above, plaintiff has not raised a question of material fact that its additional labor costs were caused by the defendant, or that its movement of equipment was unusual; moreover, as argued by defendant, plaintiff does not dispute that the work in question was covered by its contract with Northwest Airlines. A contract is implied in order to prevent unjust enrichment only where there is no express contract covering that subject matter. Id. Summary judgment will enter for defendant on this count as well.

B.  OBJECTIONS BY HUNT TO MAGISTRATE'S ORDER

In accordance with the foregoing determination by the court to grant Hunt's motion for summary judgment as to the entirety of the complaint, Otis' pending

objections to the magistrate's order granting Hunt's motion to strike Otis' proposed expert witness are hereby dismissed as moot.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is hereby GRANTED, and defendant's objections to the magistrate's order to strike Otis' proposed expert witness are dismissed as moot. Accordingly, plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.


                                          s/George Caram Steeh  
                                          GEORGE CARAM STEEH  
                                          UNITED STATES DISTRICT JUDGE

Dated:  June 3, 2005

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on June 3, 2005, by electronic and/or ordinary mail.

                                          s/Josephine Chaffee  
                                          Secretary/Deputy Clerk